* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence and modify the Opinion and Award. Therefore, the Full Commission herein modifies the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee sustained an injury on or about August 30, 2004, with the exact date to be determined by the Industrial Commission.
5. The injury arose out of and in the course of employment and is compensable.
In addition, the parties stipulated into evidence a packet of Industrial Commission forms and discovery responses. A packet of stipulated medical records and reports was submitted after the hearing.
The Pre-Trial Agreement dated April 12, 2005, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 34 year old high school graduate who had completed one year of technical school. Plaintiff began working for the defendant in the summer of 2000 as a restaurant waiter. While so employed on August 30, 2003, plaintiff sustained a compensable injury by accident when he slipped and fell in the restaurant, landing on his right elbow and back.
2. On August 30, 2003, plaintiff presented to Loris Healthcare due to his work-related fall. Plaintiff was prescribed Percocet for pain. On August 31, 2003, plaintiff presented to the emergency room at Grand Strand Regional Medical Center complaining of pain due to his fall on August 30, 2003. The emergency room physician examined plaintiff and requested x-rays. Although the x-rays were negative and revealed no definite evidence of bone injury, there was minimal wedging of T11 and T8. Dr. Robert Young, a radiologist, indicated this could be developmental. Plaintiff was prescribed Oxycontin.
3. On September 3, 2003, plaintiff presented to his primary medical care provider, Seaside Medical Center, and was seen by Andrea Nance, a nurse practitioner. Plaintiff complained of persistent back and right shoulder pain from his injury. Nurse Nance ordered an MRI. The MRI was performed on September 16, 2003, and the films revealed no evidence of fracture, although there was some spondylosis in his thoracic spine with small disc protrusions. An MRI of his right shoulder was also performed without significant findings. Nurse Nance referred plaintiff to a neurosurgeon and plaintiff was prescribed more Percocet.
4. On September 4, 2003, plaintiff returned to Dr. Young complaining of pain from his neck to his low back. Dr. Young prescribed Celebrex and kept plaintiff out of work.
5. On September 9, 2003, plaintiff again presented to Seaside Medical Center complaining of pain in his neck and back. On September 15, 2003, plaintiff was again prescribed Percocet and Ultracet.
6. On October 1, 2003, plaintiff presented to Dr. Thomas Melin, a neurosurgeon, complaining of severe thoracic back pain, which had not significantly improved with medical treatment. Dr. Melin ordered a thoracic MRI, but the film was of poor quality. Dr. Melin subsequently ordered a bone scan to be sure plaintiff's symptoms were not from a compression fracture. The bone scan was performed on October 7, 2003, and was negative.
7. Plaintiff subsequently returned to Dr. Melin on October 20, 2003, with persistent complaints of pain. In view of the lack of findings on the bone scan, Dr. Melin referred plaintiff to pain management.
8. On December 5, 2003, the plaintiff presented to Dr. Alan Tamadon, a Rehabilitation and Physical Medicine Specialist. Plaintiff complained of persistent pain. Dr. Tamadon noted that there was no evidence of fracture or disc rupture on his MRI and bone scan and that plaintiff had been taking Oxycontin. Dr. Tamadon determined that the headaches that plaintiff reported were a rebound effect from the narcotics. Dr. Tamadon prescribed non-narcotic mediation and physical therapy.
9. At the next office visit on December 12, 2003, plaintiff requested that Dr. Tamadon prescribe Oxycodone or Percocet, but instead Dr. Tamadon prescribed other medications and administered trigger point injections. Plaintiff subsequently underwent nerve testing, which proved to be negative for nerve damage or impingement. He also ordered an MRI of the cervical spine to rule out any problems there that could be causing headaches. The test was normal. Dr. Tamadon gradually eased plaintiff's work restrictions and on January 4, 2004, raised the lifting restriction to twenty-five pounds. He continued to treat plaintiff with physical therapy, medications and trigger point injections.
10. On January 23, 2004, due to plaintiff's unremarkable MRI, normal neurological exam, normal studies of plaintiff's cervical and thoracic spine, Dr. Tamadon released plaintiff from his care and released plaintiff to return to work at regular duty. Dr. Tamadon assigned plaintiff a 2% permanent partial disability rating.
11. At the hearing before the Deputy Commissioner, plaintiff testified that he returned to work for defendant-employer on January 24, 2004; however, according to the Form 28 Return to Work Report submitted by defendants, plaintiff did not return to work for defendant-employer until February 3, 2004. Notwithstanding plaintiff's release to return to work, he quit his job on February 3, 2004, with defendant-employer to move to the Hendersonville, North Carolina area where members of his family lived. Within a week, he presented to the emergency room at Margaret Pardee Memorial Hospital complaining of chronic back pain and requesting pain mediations. The emergency room physician prescribed non-narcotic medication on that occasion. However, when plaintiff returned two months later on April 13, 2004, he received a prescription for Vicodin.
12. Defendants authorized plaintiff to see Dr. Hans Hansen, a pain management specialist. Dr. Hansen evaluated plaintiff on October 21, 2004. Plaintiff reported his fall at work on August 30, 2003, and indicated that he had sustained a compression fracture in his lumbar spine. However, the medical notes reveal plaintiff actually injured his thoracic spine when he fell, not his lumbar spine.
13. Although Dr. Hansen did not have the medical records and did not know the magnitude of plaintiff's problem, he was aware that plaintiff had been regularly visiting the emergency room and receiving controlled substances since his fall on August 30, 2003. Dr. Hansen instructed plaintiff not to visit hospitals for pain control medications and prescribed limited Hydrocodone in order to keep him away from the hospital. Dr. Hansen also prescribed Ultracet, which was to be the primary pain medication.
14. In November and December of 2004, Dr. Hansen administered lumbar epidural steroid injections. Plaintiff reported some improvement from the injections, but he did not keep his next appointment on December 29, 2004. He next returned to the doctor on June 22, 2005, and received another epidural steroid injection. Dr. Hansen ordered an MRI at that time, but he had not received the results by August 25, 2005, when he was deposed. Plaintiff failed to report to his July 13, 2005, appointment.
15. Dr. Hansen opined that the treatment he rendered to plaintiff was a benefit to plaintiff and that by report, plaintiff's numerous visits to the emergency room decreased once plaintiff began treatment with him. Dr. Hansen further concurred with Dr. Tamadon's 2% permanent partial disability rating for plaintiff.
16. The competent evidence in the record establishes that prior to treating with Dr. Hansen, plaintiff continued his drug-seeking behavior presenting from one emergency room to another requesting Vicodin, Morphine and Percocet, among others. The competent evidence in the record further establishes that plaintiff had a serious drug problem and frequently sought narcotics from many medical providers. Plaintiff's drug seeking behavior continued throughout the period just after his compensable injury by accident through his beginning treatments with Dr. Hansen.
17. The Full Commission finds that, notwithstanding plaintiff's compensable injury of August 30, 2003, his complaints of ongoing pain and disability after January 23, 2004, were not credible as he exaggerated his symptoms in order to obtain controlled substances.
18. Defendants failed to file a Form 60 Employer's Admission Employee Right to Compensation with the Industrial Commission in this case and have not shown reasonable excuse for their failure to comply with the law. Moreover, defendants continued to voluntarily pay indemnity to plaintiff and directed medical care. The Full Commission therefore deems this claim to be an admitted claim.
19. At the time of the injury that gave rise to this claim and pursuant to the Form 22 Statement of Days Worked and Earnings of Injured Employee filed in this matter, it appeared that defendants computed the wage to be slightly less than what it should have been and therefore, compensation was paid at a lower rate. Plaintiff's average weekly wage was actually $291.98, yielding a compensation rate of $194.65.
20. It was unclear from the evidence whether defendants paid compensation to plaintiff for temporary total disability after January 23, 2004.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 30, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to temporary total disability compensation in the amount of $194.65 per week for the time period beginning when he was out of work due to his compensable injury by accident until January 23, 2004. The parties shall determine said beginning dates via the defendant's company records.
3. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to permanent partial disability benefits for 6 weeks at a compensation rate of 194.65 per week for the 2% permanent partial disability rating to his back. N.C. Gen. Stat. § 97-31.
4. Plaintiff is entitled to have defendants pay for his medical expenses from August 30, 2003, through January 23, 2004, including all medical examinations, treatments and recommendations, including those of Dr. Hans Hansen and any of his future recommendations that may effect a cure, give relief, and tend to lessen plaintiff's disability due to his fall on August 30, 2003. Defendants shall not be required to pay for any future medical treatment that is not or has not been recommended by Dr. Hansen. N.C. Gen. Stat. §§ 97-2(19); 97-2(19).
5. Sanctions shall be assessed against defendants for their failure to submit a Form 60 in this case, and the statutory penalty should be assessed for their failure to submit a Form 19 to the Industrial Commission as required by law. N.C. Gen. Stat. §§ 97-18 (b); 97-92; Rules 103 and 802, Workers' Compensation Rules of the North Carolina Industrial Commission.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay to plaintiff temporary total disability compensation benefits at the rate of $194.65 per week for his compensable injury by accident for the time period beginning when he was out of work due to his compensable injury by accident until January 23, 2004. Said beginning dates shall be determined by the parties via the defendant's company records. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Subject to a reasonable attorney's fee herein approved, the defendants shall pay to plaintiff permanent partial disability benefits for 6 weeks at a compensation rate of $194.65 for the 2% permanent partial disability rating assigned to his back. This compensation accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay for all medical expenses incurred as a result of plaintiff's compensable injury by accident of August 30, 2003 through January 23, 2004, including all medical examinations, treatments, recommendations, including those of Dr. Hans Hansen and any of his future recommendations that may effect a cure, give relief, and tend to lessen plaintiff's disability due to his fall of August 30, 2003. The defendants shall not pay for any future medical treatment that is not or has not been recommended by Dr. Hansen.
4. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
5. The defendants are entitled to a credit for any compensation paid to plaintiff after January 23, 2004, if any.
6. Defendants shall pay sanctions in the amount of $1,000 for their failure to file a Form 60 with the Industrial Commission as required by law.
7. Defendants shall pay a penalty of $25.00 for its failure to file a Form 19 with the Industrial Commission.
8. Defendants shall pay the costs.
This the___day of September 2006.
 S/____________ PAMELA T. YOUNG CHAIRMAN
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER